**V.E., Appellee**

v.

**W.M., Appellant.**

Superior Court of Pennsylvania.

Argued June 5, 2012.

Filed Sept. 24, 2012.

Barbara Schneider, Exton, for appellant.

Mary A. Jones, West Chester, for appellee.

BEFORE: STEVENS, P.J., LAZARUS, J., and COLVILLE, J.*

OPINION BY LAZARUS, J.

W.M. appeals from the order entered in the Court of Common Pleas of Chester County denying his preliminary objections to V.E.'s ("Mother") complaint in support for her child, M.E., and ordering W.M. to submit to genetic testing. For the reasons that follow, we affirm.

Mother gave birth to M.E. in April of 2011. Nine days after the child was born, Mother filed a complaint against W.M. seeking child support. W.M. filed preliminary objections, denying paternity, averring that *his* father, W.M., Sr., is the child's biological father. W.M. also averred that Mother is estopped from asserting he is the father under the doctrine of paternity by estoppel because:

1. Plaintiff has, by her conduct, accepted the Defendant's father, [W.M., Sr.] as the father of her minor child, [M.E.] . . .

2. Defendant's father, [W.M., Sr.] signed the minor child's birth certificate, as the child's father, at the time of birth.

3. Defendant's father, [W.M., Sr.], accepted the minor child as his own by holding it out [to be his] and/or supporting the child.

Preliminary Objections, 6/23/2011, ¶ 3.

On August 13, 2011, the court held a hearing on the preliminary objections. The trial court determined as a matter of law that the defense of paternity by estoppel was not applicable and, therefore, it refused a hearing on that issue. At that time, M.E. was four months old, and, therefore, the court reasoned that application of the doctrine of paternity by estop-

pel would not advance its underlying public policy.

On appeal, W.M. claims the court erred in ordering genetic testing without an evidentiary hearing on the issue of paternity by estoppel and in summarily determining that paternity by estoppel was not applicable. We find no error. The trial court properly disposed of the estoppel issue in accordance with Pa.R.C.P. 1910.15 and the relevant case law.

"Appellate review of support matters is governed by an abuse of discretion standard." *Warfield v. Warfield*, 815 A.2d 1073, 1075 (Pa.Super.2003). "An abuse of discretion is '[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record.'" *Id.* (quoting *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 834 (2002)).

"[T]he doctrine of estoppel embodies the fiction that, regardless of biology, in the absence of a marriage, the person who has cared for the child is the parent." *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176, 180 (1997). An individual may be "estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child." *Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201, 206 (1993). This Court, sitting *en banc*, has explained:

[T]he legal determination that because of a person's conduct (e.g. holding out the child as his own, or support the child) that person, regardless of his true biological status, will not be permitted to deny parentage, *nor will the child's mother who has participated in this conduct be permitted to sue a third par-*

---

* Retired Senior Judge assigned to the Superior Court.

ty for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel by paternity actions is aimed at 'achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding paternity of the child.' *R.W.E. v. A.B.K.*, 961 A.2d 161, 169 (Pa.Super.2008) (*en banc*), quoting *Wieland v. Wieland*, 948 A.2d 863, 869 (Pa.Super.2008) (emphasis added).

Here, Mother filed her complaint when the child was just nine days old. The court entered its order when the child was four months old. Given the child's infancy, the court determined as a matter of law that the doctrine of paternity by estoppel was not applicable; there was no time for Mother's conduct to be an issue. The court stated: "Surely Mother's prior conduct regarding paternity of the child has done nothing to warrant estoppel." Trial Court Opinion, 12/2/2011, at 4. The court also determined that the policy concerns of paternity estoppel are irrelevant here, and that the most efficient method to determine paternity was genetic testing. We agree.

W.M. argues that our Supreme Court's recent decision in *K.E.M. v. P.C.S.*, — Pa. ——, 38 A.3d 798 (2012), supports his claim that a hearing must be held before the court orders genetic testing. W.M.'s reliance on *K.E.M.* is misplaced.

In *K.E.M.*, mother was married when the child was born, but genetic testing excluded mother's husband as the biological father. When the child was four years old, Mother filed a complaint in support against the man with whom she was having an affair during the time she conceived the child. Up until that time, both the husband and putative father contributed to the support of the child. The trial court applied the presumption of paternity and dismissed the complaint. Alternatively, the trial court stated that while the presumption of paternity is applicable, mother is equitably estopped from pursuing support/paternity against the biological father.

Mother appealed, and this Court affirmed in a divided decision. *See K.E.M. v. P.C.S.*, No. 1566 MDA 2010, slip op. at 5, 29 A.3d 843 (Pa.Super. Apr. 21, 2011) (unpublished decision). The panel majority differed with the common pleas court's conclusion that the presumption of paternity applied, reasoning that it is inapplicable where it would not protect a marriage "from the effects of disputed paternity." *Id.*, slip op. at 5. The majority, however, deemed the error it found in the common pleas court's application of the presumption of paternity to be harmless, since it agreed with that court that paternity by estoppel applied.

■■ The Supreme Court granted allowance of appeal to consider the application of the doctrine of paternity by estoppel in that case, and, "more broadly, its continuing application as a common law principle." *K.E.M.*, 38 A.3d at 803. After review, our Supreme Court remanded the case for a hearing, noting that the record "is very sparse in terms of [the child's] best interests," and "offers very little feel for the closeness of [the child's] relationship with [husband]." *Id.* at 809. Further, the Court stated that it had "no sense for the harm that would befall [the child] if [husband's] parental status were to be disestablished, either fully or, as some intermediate court decisions are now suggesting is permissible, partially (i.e., for purposes of support)." *Id.*

Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should

not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is in fact not his father.

*Fish v. Behers,* 559 Pa. 523, 741 A.2d 721, 724 (1999) (citation omitted). The focus of the doctrine of paternity by estoppel is the father-child relationship and whether that relationship has been reinforced through either the mother or the "father." The doctrine is a legal fiction and it exists for the benefit of the child; where there is no relationship, like here, application of the doctrine would serve no purpose.

■ Contrary to W.M.'s claim, *K.E.M.* stands first for the proposition that paternity by estoppel is applicable only where it is in the best interests of the child. Additionally, *K.E.M.* supports increased flexibility with respect to application of paternity by estoppel. Rather than rote application, the courts must look to the facts of each specific case and the relationship that is to be protected. Where there is no relationship, application of the doctrine is irrelevant to the child's best interests. Absent a relationship, what becomes relevant is who will be financially responsible for the child.

We agree with the trial court that as a matter of law, "it is impossible for a four month old child to suffer any damaging trauma from the performance of genetic testing ... as there has been an insufficient amount of time for any bonding to have occurred between any father and child." Trial Court Opinion, 12/2/2011, at 3. In addition, here, Mother is not married to either man, further distinguishing this case from *K.E.M.* Finally, given that our rules of court direct the courts to enter an order for genetic testing for a child born out of wedlock, genetic testing is appropriate here. *See* Pa.R.C.P. 1910.15(b); *see also* Pa.R.C.P. 1910.15(c) ("If either party or the court raises the

issue of estoppel ..., the court shall dispose promptly of the issue and may stay the order for genetic testing until the issue is resolved.").

We find no error or abuse of discretion, *Warfield, supra,* and, therefore, we affirm the trial court's order.

Order affirmed.