**ADB, Jr. v. AMK**

C.P. of Lycoming County, No. 14-21,700

*W. Jeffrey Yates*, for plaintiff.
*Bradley Hillman*, for defendant.

ANDERSON, *J.*, Jan. 21, 2015—Before the court is plaintiff's complaint to establish paternity and for genetic testing, filed December 23, 2014. A hearing was held January 13, 2015.

The child at issue is ARK, born July 15, 2014. At the time of ARK's birth, plaintiff was residing with defendant, although they were not married. Plaintiff signed an acknowledgment of paternity on July 17, 2014. The parties continued to reside together as a family until October 2014, when they separated. Because defendant received public assistance, she was required to file for support for ARK in October 2014. Plaintiff then filed the instant petition, seeking an order for genetic testing because he believes that he is not the father of the child.

According to 23 Pa.C.S. Section 5103(g)(2), "After the expiration of [the] 60 days, an acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence." Indeed, plaintiff alleged in his petition that he was induced to sign the acknowledgment by fraud or mistake. Ordinarily, therefore, the court would focus on those issues. The matter has been expanded, however, by the courts' decisions in *KEM v. PCS*, 38 A.3d 798 (Pa. 2012), and *RKJ v. SPK*, 77 A.3d 33 (Pa. Super. 2013), wherein the courts have applied the doctrine of paternity by estoppel "only where it can be shown, on a developed record, that it is in the best interests of the involved child."[1] The court will thus address the best interests of ARK in deciding whether genetic testing should be ordered in spite of the acknowledgment.[2]

In the instant case, plaintiff testified that the parties

---

1. In RJK, the court found that SPK had signed an acknowledgement of paternity knowing that he was not the biological father, but the application of Section 5103(g)(2) was not mentioned, and the court analyzed the evidence to determine the best interest of the child.

2. The court would not find fraud, duress or material mistake of fact from the record (except to the extent it appears that both parties were attempting to defraud the alleged biological father, as explained infra).

had dated once for two months "years prior" and began dating again recently in late January, early February 2014. Plaintiff testified that when they began dating in 2014 he knew defendant was already pregnant to someone else. While defendant testified that the parties had sexual relations even when they weren't dating, she did admit that she was not sure who was ARK's father, rather than attempting to name plaintiff as the only possibility, and testified that one JM might be the father. According to plaintiff, he signed the acknowledgment of paternity at defendant's request, so that she would not have "legal problems" with Mr. M.[3] Plaintiff stated that he had been willing to raise both of defendant's children[4] as his own "as long as they were together". It appears that Mr. M knows of ARK's birth and that he is possibly her father, but he has not contacted plaintiff about the matter. It was not made clear whether he has contacted defendant. Since the separation in October, plaintiff has had one visit with ARK, in December 2014.

The doctrine of paternity by estoppel now focuses on the father-child relationship and whether that relationship has been reinforced through either the mother or the "father." *V.E. v. W.M.*, 54 A.3d 368 (Pa. Super. 2012).[5] "The doctrine is a legal fiction and it exists for the benefit of the child; where there is no relationship, like here, application of the doctrine would serve no purpose."[6] *Id.* at 371. In the instant case, ARK is only six months

---

3. What was meant by "legal problems" was never explained.

4. Defendant testified to having given birth to an older daughter on August 22, 2013.

5. The court notes that in *V.E.*, an acknowledgment of paternity had been signed by someone other than the putative father, but that factor was not considered in the court's analysis.

6. The court found no relationship based on the simple facts that the child was nine days old when the petition was filed, and only four months old at the time of the hearing.

old and the court may assume she has established no bond whatsoever with plaintiff.[7] Therefore, as in *V.E.*, "application of the doctrine is irrelevant to the child's best interests. Absent a relationship, what becomes relevant is who will be financially responsible for the child." *Id.* The court will therefore order genetic testing and if plaintiff is correct and he proves not to be ARK's father, defendant will be free to pursue Mr. M for support.

## ORDER

And now, this 21st day of January 2015, for the foregoing reasons, plaintiff's complaint to establish paternity and for genetic testing is hereby granted. The domestic relations office is requested to arrange for the testing and the parties are hereby ordered and directed to cooperate with those arrangements. Plaintiff shall pay the fee of $56.85 to the domestic relations office prior to testing.

---

7. "[A]s a matter of law, it is impossible for a four month old child to suffer any damaging trauma from the performance of genetic testing …. as there has been an insufficient amount of time for any bonding to have occurred between any father and child." *V.E. v. W.M.*, 54 A.3d 368, 371 (Pa. Super. 2012).