J-A18035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.J.Y. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.L. | : | No. 1907 WDA 2016 |

Appeal from the Order Entered November 18, 2016
In the Court of Common Pleas of Erie County
Civil Division at No(s): NS201401090

BEFORE: BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.: **FILED OCTOBER 31, 2017**

K.J.Y. ("Mother") appeals from the order entered November 18, 2016, in the Erie County Court of Common Pleas, directing B.L. ("Father") to pay child support for the parties' minor son, C.Y.L. ("Child"). On appeal, Mother argues the trial court erred by (1) excluding from Father's net monthly income calculation significant capital gains he received in 2014, and (2) failing to provide reasons on the record why a substantially higher upward deviation from the child support guidelines was not appropriate. For the reasons below, we affirm.

The facts underlying this appeal are as follows. Mother and Father were never married, but have one son, Child, who was born in November of 2011. Since Child's birth, Mother and Child have lived in a home paid for by Father. *See* N.T., 10/28/2016, at 131. On July 16, 2014, Mother filed a

complaint for child support. However, less than a month later, she withdrew the complaint. *See* Consent Order, 8/11/2014.

Subsequently, on January 11, 2016, Mother filed a second petition for child support. Support conferences were conducted before a domestic relations conference officer on March 28, 2016, and May 6, 2016. Thereafter, on May 11, 2016, the conference officer entered a "Summary of Trier of Fact" and recommended Father pay Mother $14,173.79 per month in child support. *See* Summary of Trier of Fact, 5/11/2016, at 3.

By way of background, Mother owns and operates a small business, while Father has "various degrees of ownership in a number of different broadcast media-related business entities." Trial Court Opinion, 2/9/2017, at 4. Father sold his interest in two of those entities in 2014, which generated $6,600,000.00 in capital gains. The conference officer included in Father's monthly net income $5,950,196.04 he received in capital gains in 2014, and amortized that amount over two years. *See* Summary of Trier of Fact, 5/11/2016, at 2. Accordingly, the officer determined Father's net monthly income was $252,076.28, and Mother's net monthly income was $3,445.14. The final support recommendation included a $1,500.00 downward deviation because, *inter alia*, Mother lives rent free in a home owned by Father.

On May 24, 2016, Father filed a demand for a *de novo* hearing. The hearing was conducted on October 28, 2016. Thereafter, on November 18, 2016, the trial court entered the child support order now on appeal.

Relevant to this appeal, the court excluded the capital gains Father received in 2014 from his income calculation and determined the parties' net monthly incomes were $48,696.00 for Father, and $5,063.00 for Mother. The court then fashioned the support award, directing Father to pay Mother as follows: (1) from January 11, 2016, through September 12, 2016, $4,221.43 per month (Father has 40% custody); (2) from September 13, 2016, through December 31, 2016, $3,698.55 per month (parties share 50% custody); and (3) from January 1, 2017, to present, $3,726.09 per month (private school tuition removed). The monthly payments represent a ten percent upward deviation from the support guidelines. This appeal followed.[1, 2]

Mother's first issue on appeal challenges the trial court's failure to include in Father's net monthly income calculation the nearly $6 million in capital gains he received in 2014. *See* Mother's Brief at 11-19.

Our review of a child support order is well-settled:

"Appellate review of support matters is governed by an abuse of discretion standard." *V.E. v. W.M.*, 54 A.3d 368, 369 (Pa. Super. 2012). When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. *Kimock v. Jones*, 47

_____

[1] On December 21, 2016, the trial court ordered Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mother complied with the directive, and filed a concise statement on January 4, 2017.

[2] Father initially filed a cross-appeal on December 28, 2016, but later filed a *praecipe* to discontinue the appeal, which was granted on March 9, 2017. *See* Appellate Docket No. 7 WDA 2017.

A.3d 850, 853–54 (Pa. Super. 012). "An abuse of discretion is '[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record.'" **V.E.**, 54 A.3d at 369. "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." **Mencer v. Ruch**, 928 A.2d 294, 297 (Pa. Super. 007).

**R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa. Super. 2013), *appeal denied*, 84 A.3d 1064 (Pa. 2014).

Pennsylvania Rule of Civil Procedure 1910.16-2 provides that "[g]enerally, the amount of [child] support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16-2. The Rule further states "[m]onthly gross income is ordinarily based upon at least a six-month average of all of a parties' income" as defined in 23 Pa.C.S. § 4302, and includes, *inter alia*:

(2) net income from business or dealings in property; [and]

…

(8) other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source.

Pa.R.C.P. No. 1910.16-2(a)(2), (8). Similarly, Section 4302 defines "income" as:

compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts;

- 4 -

all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302.

Based upon these broad definitions of income, Mother argues the trial court erred when it failed to include the capital gains Father received in 2014 in his income calculation. *See* Mother's Brief at 11-17. She acknowledges the current petition for support was not filed until 2016. However, Mother emphasizes she originally sought child support in 2014, and insists a "factual issue arises as to whether or not [Father] knew that he would be receiving the $6,000,000.00 (six-million dollars) when he induced [Mother] to sign the consent for the issuance of the court order which cancelled the [2014] support conference." Mother's Brief at 13. Moreover, she points out that, pursuant to Pa.R.C.P. 1910.16-2(a), a party's monthly gross income is "ordinarily based upon at least a six-month average" of the party's income, "leaving the door open for the Court to include earnings over a longer period of time." Mother's Brief at 14. Mother insists "[t]he present case is certainly the type of factual scenario which would require a review of earnings over a period of time longer than six months taking into

consideration the failure of [Father] to notify [Mother] of the $6,000,000.00 lump sum earnings." Mother's Brief at 14-15.

The trial court addressed this argument in its opinion as follows:

As one would expect, the details of the 2014 transaction were relatively complex. However, for support purposes, the inquiry is simple: Is capital gain received in 2014 properly included in Father's net monthly income for purposes of a child support Complaint filed in 2016? Under the facts of this case, the answer is clearly no. There was no child support order in effect in 2014 or 2015. **In fact, the docket reflects that Mother filed for child support in July of 2014, but then voluntarily withdrew her action in August of 2014, and did not file again until 2016. There was no argument or evidence presented that Father is responsible for Mother's delay in filing for support.** Nor was there evidence to suggest that the business transactions resulting in $6.6 million in 2014 were likely to recur in subsequent years, so as to reflect current or future earning capacity, or that Father voluntarily or willfully reduced his income after 2014 to avoid a child support obligation.

Support orders "must be fair, non-confiscatory and attendant to the circumstances of the parties." *Fennell v. Fennell*, 753 A.2d 866, 868 (Pa. Super. 2000). "When a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse." *Fitzgerald v. Kempf*, 805 A.2d 529, 532 (Pa. Super. 2002) (internal quotation marks omitted). Further, "all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation." *Fennell*, *supra* at 86. "[T]herefore…the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Id.*; *see also Spahr v. Spahr*, 869 A.2d 548, 552 (Pa. Super. 2005).

There is no evidence that the 2014 sale transaction was other than an arms-length business deal involving multiple parties and investors. **Nor is there evidence that Father manipulated the 2014 transaction and/or receipt of sale**

- 6 -

**proceeds for the purpose of avoiding a child support obligation**. Accordingly, the Court properly rejected the conference officer's recommended order with regard to the 2014 capital gain.

Trial Court Opinion, 2/9/2017, at 4-5 (emphasis supplied).

Our review of the record reveals no abuse of discretion on the part of the trial court. Although, in her brief, Mother blames Father for the withdrawal of her 2014 support complaint, the record simply does not support this allegation. Mother presented no testimony or evidence that Father induced her to withdraw the complaint, let alone that he did so with an improper motive, *i.e.*, to shelter his 2014 capital gains from being considered as income for child support purposes.

Moreover, Father's expert forensic accountant, Richard Brabender, testified regarding the purchase and sale of the business, which resulted in the 2014 capital gains. *See* N.T., 10/28/2016, at 105-108. This testimony supports the trial court's conclusion that the sale was an "arms-length business deal involving multiple parties and investors." Trial Court Opinion, 2/9/2017, at 5. Mother presented no evidence that Father manipulated the sale in any way so as to remove the income from a child support order. Further, Brabender noted the 2014 capital gains predated Mother's support complaint by two years. *See* N.T., 10/28/2016, at 108. He stated he did include 2015 capital gains in his calculation because there was an additional amount distributed in 2016. *See id.* However, Brabender testified there would be no further distributions after 2016. *See id.* at 108-109, 122.

Accordingly, we conclude the trial court's findings are supported by the record.

Mother also asserts, however, the trial court erred when it (a) did not impute a "reasonable income to [F]ather for what he could have earned on the money[,]" and (b) accepted the opinion of Father's expert witness that the "retained earnings" listed on Father's tax forms do not constitute income for support purposes. *Id.* at 17-18. Father insists that both of these claims are waived. *See* Father's Brief at 19, 22. We agree. Mother did not include either of these two issues in her court-ordered concise statement. *See* Statement of Errors Complained of on Appeal, 1/4/2017. Therefore, the trial court did not address them in its opinion, and they are waived for our review on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived."); *Morgante v. Morgante*, 119 A.3d 382, 396 (Pa. Super. 2015).

In her second issue, Mother argues the trial court failed to "specify, in writing or on the record, the guideline amount of support," and its reasons for awarding only a ten percent upward deviation. Mother's Brief at 19. First, she maintains the court failed to calculate the support payment pursuant to the "high income" formula set forth in Pa.R.C.P. 1910.16-3.1. *See id.* at 20. Next, she claims the court abused its discretion with respect to several of the deviation factors listed in Section 1910.16-5(b), and failed to make findings of fact on the record to support its negligible ten percent upward deviation. *See id.* at 20-21. Lastly, Mother emphasizes that Father,

as "a rich parent," must provide his child with "the advantages that his []

financial status indicates to be reasonable." *Id.* at 22. Accordingly, Mother

insists the child support award was insufficient in light of Father's

"extravagant lifestyle." *Id.* at 23.

Because the parties' net monthly income is more than $30,000.00, the

support award is calculated pursuant to a three-step process outlined in Rule

1910.16-3.1.

> The three-step process involves: (1) implementation of the child
> support formula prescribed in the section; (2) applicable
> adjustments for shared custody and allocations of additional
> expenses; and (3) consideration of additional factors to
> determine whether a downward or upward deviation is
> appropriate.

***Hanrahan v. Bakker***, 151 A.3d 195, 203 (Pa. Super. 2016), *appeal*

*granted*, ____ A.3d ____ [19 MAP 2017] (Pa. May 3, 2017). ***See also***

Pa.R.C.P. 1910.16-3.1(a)(1)-(3) (high income cases). The pertinent

deviation factors are set forth in Rule 1910.16-5(b), which provides:

> In deciding whether to deviate from the amount of support
> determined by the guidelines, the trier of fact shall consider:
>
> (1) unusual needs and unusual fixed obligations;
>
> (2) other support obligations of the parties
>
> (3) other income in the household;
>
> (4) ages of the children;
>
> (5) the relative assets and liabilities of the parties;
>
> (6) medical expenses not covered by insurance;
>
> (7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b).

Rule 1910.16-3.1(a)(3) requires the trial court "make findings of fact on the record or in writing" after considering the deviation factors, and before adjusting the monthly payment amount upward or downward. Pa.R.C.P. 1910.16-3.1(a)(3).[3] However, this Court has emphasized "there is no required amount of detail for the trial court's explanation[;]" rather, "[a]ll that is needed is that the enumerated factors are considered and that the deviation is based on those considerations." *E.R.L. v. C.K.L.*, 126 A.3d 1004, 1009 (Pa. Super. 2015). Furthermore, we "may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Id.* at 1007 (quotation omitted).

First, we note that contrary to Mother's allegation, the trial court properly calculated Father's support payment for each relevant time period based upon the Rule 1910.16-3.1 formula. *See* Trial Court Opinion, 2/9/2017, at 10-14 (including calculation charts). Mother fails to explain

_____

[3] Rule 1910.16-5 provides a similar requirement: "If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation." Pa.R.C.P. 1910.16-5(a).

how or why the court's calculations were incorrect. ***See*** Mother's Brief at 20.

Second, although the trial court acknowledged it failed to provide "a detailed written analysis of the Rule 1910.16-5(b) factors," it, nevertheless, concluded Mother was "not an aggrieved party." Trial Court Opinion, 2/9/2017, at 8. The court explained:

> Mother's argument that the deviation should have been greater is without merit, as deviation from the presumptive guideline amount is entirely discretionary, as is the amount of the deviation. Indeed, the Court was free to grant no deviation at all. But more importantly, the facts of this case did not warrant a detailed factors analysis. There was no testimony or other evidence offered by either party of unusual needs and unusual fixed obligations (1910.16-5(b)(1)); other support obligations of the parties ((b)(2)); other income in the household ((b)(3)); considerations relative to the age of the child ((b)(4)); or extraordinary medical expenses not covered by insurance ((b)(6)).
>
> Instead the evidence related only to disparity in the relative assets of the parties ((b)(5)), potentially resulting in a disparate standard of living of the parties and their child ((b)(7)), which, in turn, could negatively impact the best interests of the child ((b)(9)). Though Mother had difficulty identifying additional things or opportunities she could not provide the child that Father could,[7] the Court determined that a modest upward deviation was appropriate in light of the three factors implicated by the facts presented at trial, which were obvious to all in attendance, as the record reflects.[8] Accordingly, under the circumstances of this case, the Court's order was sufficient under Rule 1910.16-5.

_____

[7] On direct examination, prior to a series of leading questions, Mother was asked by her counsel: "Are there things [Father] does with [the child] that you were not able to do that you would like to do? Give us some examples." To which Mother responded: "I would like to

- 11 -

be able to – I just – I –I just – I don't know. I just – There's so much I would like to do that he does with him that I can't do. … I can't think of them right now."

[8] The Court also considered Mother's Income and Expense Statement, admitted as Mother's Exhibit 5, claiming monthly expenses totaling $10,030.00. The expenses include the mortgage amount of $1,500.00 paid by Father, and "Other" custody-related litigation expenses of $800.00 that should not recur monthly given the parties resolved their custody dispute in September of 2016. Backing out those expenses, the new total is $7,730.00, which is sufficiently less than Mother's income combined with child support under the November 18, 2016 Order, even allowing for her relatively generous standard of living-type expenses, such as travel, entertainment, clothing, household help, legal fees and credit card payments.

*Id.* at 8-9.

We again find no abuse of discretion on the part of the trial court. Although the court, admittedly, failed to make findings of fact on the record regarding the deviation factors before entering the present child support award, Mother has not established she was prejudiced by the court's omission. Indeed, as noted above, the trial court explained its findings with regard to the Rule 1910.16-5 deviation factors in its February 9, 2017, opinion. ***See id.***

Moreover, Mother's primary concern appears to be that by virtue of Father's greater wealth, he is able to live in a "higher value" home, and lead "an extravagant lifestyle where, among other activities, he takes the child on vacations to Europe and also flies by private plane." Mother's Brief at 23. She insists that "[t]he reasonable needs of a child whose parents are

wealthy may include items that would be considered frivolous to parents who are less well off." *Id.* at 22.

We remind Mother that the standard we apply in reviewing a trial court award is abuse of discretion. *See R.K.J.*, *surpa*, 77 A.3d at 37. Here, Mother has provided us with no basis to conclude the court's ten percent upward deviation from the support guidelines constituted an abuse of discretion, save for her general assertion that Father makes more money than she does. Nonetheless, as the trial court noted in a footnote, Mother's income and expense statement included "relatively generous standard of living-type expenses, such as travel, entertainment, clothing, household help, legal fees and credit card payments." Trial Court Opinion, 2/9/2017, at 9 n.8. Mother does not identify any specific activities that child cannot participate in during Mother's custodial periods which is a result of her lower income. *See* Mother's Brief at 21-23. Accordingly, she is entitled to no relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2017