**Daryl F. SPAHR, Appellee,**

v.

**Dale C. SPAHR, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.

Filed Feb. 22, 2005.

John C. Howett, Jr., Harrisburg, for appellant.

Chris F. Gillotti, Pittsburgh, for appellee.

BEFORE: BENDER, GANTMAN, and JOHNSON, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Dale C. Spahr ("Husband"), asks us to determine whether the Lancaster County Court of Common Pleas erred in its order awarding child and spousal support to Appellee, Daryl F. Spahr ("Wife"). Specifically, Husband challenges the court's calculation of: (1) his 2003 income; (2) reasonable child support expenses; and, (3) credit for direct support payments made to Wife, prior to the entry of the support order. We hold the court properly valued Husband's 2003 income and the reasonable child support expenses. We further hold the court failed to credit Husband for all the support payments made prior to the entry of the support order. Accordingly, we affirm the order in part, vacate in part, and remand with instructions.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Husband and Wife married on August 27, 1994 and separated on February 15, 2002. Their marriage produced one minor child ("Child"), born September 2, 1999. Wife has primary custody of Child, and the parties have amicably worked out the details of Child's custody.

¶ 3 Wife is employed in a family-run horseback riding business, teaching riding and jumping. The parties stipulated that her net monthly income is $2,000.00. Husband is the fifty-percent owner, president, and CEO of two Subchapter S corporations. The first company, G & S Foods, Inc. ("G & S"), manufactures their own brand of snack foods, as well as snack foods for private customers. The second company, Tastysnack Quality Foods ("Tastysnack"), also manufactures snack foods for private companies.

¶ 4 Historically, Husband's companies paid federal and state income taxes quarterly. However, the companies departed from this practice in 2003, when taxes were overpaid within the calendar year. In 2002, corporate profits peaked and Husband reported $804,000.00 in income. In 2003, G & S lost some customers to a larger rival, and Tastysnack had a manufacturing problem with its line of chocolate-covered pretzels. These setbacks caused Husband's reported income to fall to $365,000.00.

¶ 5 On July 21, 2003, Wife filed a complaint against Husband for child and spousal support.

After a support conference on September 17, 2003, an order was entered on November 6, 2003, awarding $15,405.90 per month for support of Wife and Child. Husband filed exceptions and a complex hearing was scheduled for December 12, 2003. On December 4, 2003, the December 12th hearing was cancelled and a complex hearing was scheduled for January 28, 2004. Husband filed a petition for emergency relief on December 5, 2003, asking to have his support reduced, which request was denied on the same day. On January 6, 2004, the January 28, 2004 hearing was rescheduled to April 27, 2004, and on April 28th, the matter was heard and then continued to May 27, 2004 for completion of testimony. On June 30, 2004, the Court ordered Husband to pay $8,999.53 per month for support of Wife and Child until July 30, 2004 and $8,576.42 thereafter.[12] On July 15, 2004,

---

1. The court calculated Husband's 2003 net income based upon a total cash inflow of $426,489.00 and a tax liability of $164,295.00 (reflecting earnings and liabilities listed in

Husband's hearing exhibit nineteen, a comparison of the parties' experts' analyses of Husband's yearly cash flow). (Trial Court Opinion, entered August 27, 2004, at 9). The

Husband appealed the June 30th order to the Superior Court. The court ordered Husband on July 19, 2004 to file a concise statement of the matters complained of on appeal pursuant to Pa. R.A.P. 1925(b), which statement was timely filed on July 21, 2004. An answer to the 1925(b) statement was filed by Wife on August 16, 2004.

(Trial Court Opinion, entered August 27, 2004, at 1–2).

¶ 6 Husband now raises three issues for our review:

DID THE TRIAL COURT MISAPPLY THE LAW, THEREBY ABUSING ITS DISCRETION, BY INCLUDING IN ITS CALCULATION OF HUSBAND'S INCOME CORPORATE DISTRIBUTIONS MADE TO HUSBAND IN APRIL OF 2003, WHICH DISTRIBUTIONS WERE NECESSARY FOR PAYMENT OF 2002 TAX LIABILITY, WHERE SAID 2002 TAX LIABILITY DID NOT ACCRUE UNTIL APRIL OF 2003; WHERE PAYMENT WAS REQUIRED BY THE APPROPRIATE TAXING AUTHORITIES; WHERE THE PENNSYLVANIA RULES OF CIVIL PROCEDURE MANDATE THE DEDUCTION OF TAXES IN ARRIVING AT AN OBLIGOR'S NET MONTHLY INCOME AVAILABLE FOR SUPPORT PURPOSES; AND WHERE HUSBAND DID NOT MAKE THE TAX PAYMENTS TO MANIPULATE HIS INCOME OR TO DEFEAT HIS SUPPORT OBLIGATION?

DID THE TRIAL COURT IMPROPERLY CONDUCT A *MELZER* ANALYSIS WHERE WIFE FAILED TO SPECIFICALLY ESTABLISH BOTH THE CHILD'S REASONABLE NEEDS AND HER EXPENSES BY SIMPLY PRORATING HER OVERALL EXPENSES?

DID THE TRIAL COURT FAIL TO PROPERLY CREDIT HUSBAND FOR ALL SUPPORT PAYMENTS MADE BETWEEN THE DATE WIFE FILED HER COMPLAINT AND THE DATE OF THE COURT'S SUPPORT ORDER NOTWITHSTANDING THE EVIDENCE AT TRIAL ESTABLISHING THE AMOUNT OF PAYMENTS HUSBAND VOLUNTARILY MADE AFTER THE EFFECTIVE DATE OF THE SUPPORT ORDER[?]

(Husband's Brief at 4).

■ ¶ 7 The applicable standard of review with respect to support awards is abuse of discretion; the amount of support awarded is largely within the sound discretion of the trial court. *Miller v. Miller,* 783 A.2d 832, 835 (Pa.Super.2001). "A finding that the court abused its discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Isralsky v. Isralsky,* 824 A.2d 1178, 1186 (Pa.Super.2003). Thus, this Court may reverse the trial court's determination only if the court's order cannot be sustained on any valid ground. *Laws v. Laws,* 758 A.2d 1226, 1228 (Pa.Super.2000).

■ ¶ 8 In his first issue, Husband contends the Subchapter S corporate distribution of $126,189.00 to him in 2003 was made solely to pay his 2002 federal and state taxes, which were due April 15, 2003.

---

court concluded Husband's 2003 net income equaled $262,194.00, or $21,849.50 per month. (*Id.*)

2. The decrease in Husband's support obligation contemplated the fact that Wife purchased a home with a smaller monthly mortgage payment than the marital residence. Wife closed on this property on July 30, 2004.

Husband complains the court erroneously included this distribution in its calculation of his 2003 income. Husband asserts these tax payments were made in accordance with tax law and established business procedure. Because Husband's businesses experienced unanticipated growth in 2002 and did better than expected, the estimated taxes he paid in 2002 did not fully satisfy the tax liability for 2002. Husband concedes, however, he inadvertently failed to make the 4th quarter estimated payment of $59,000.00 for 2002, which increased his net liability when he paid his 2002 taxes in April 2003. Husband vigorously rejects any suggestion that he used his tax payments to manipulate his income to depress his support obligation. Rather, Husband claims that "legitimate business decisions, first established when both businesses were created, and which had been cemented years before the parties separated, dictated that the 2002 taxes be paid in April of 2003." (Husband's Brief at 28). Husband insists his full 2002 tax liability did not accrue until April 15, 2003, the date on which he filed his 2002 individual tax return and the date on which payment was due. As such, the corporate distribution of $126,189.00 to him on April 11, 2003 should not have been considered income in 2003.

¶ 9 Husband further claims the Pennsylvania Rules of Civil Procedure Rule 1910.16–2(c) expressly requires that federal and state taxes be deducted from gross income to arrive at a party's income available for support. Finally, Husband maintains it was inequitable for the court to include the distribution in Husband's income because his motives for the timing of his tax payments were "pure." Husband concludes the court erred as a matter of law when it included the $126,189.00 corporate distribution in Husband's income for 2003, and the matter should be reversed and remanded for a new hearing to deter-

mine Husband's correct monthly income. We disagree.

■■■ ¶ 10 Support orders "must be fair, non-confiscatory and attendant to the circumstances of the parties." *Fennell v. Fennell*, 753 A.2d 866, 868 (Pa.Super.2000). "When a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse." *Fitzgerald v. Kempf*, 805 A.2d 529, 532 (Pa.Super.2002) (internal quotation marks omitted). Further, **"all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation."** *Fennell, supra* at 868 (emphasis added). "[T]herefore...the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Id.*

¶ 11 After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Leslie Gorbey, we conclude Husband's first issue merits no relief on appeal. The trial court discusses and properly disposes of this issue as follows:

The [c]ourt's next task is to decide which specific tax payments were to be deducted to reach Husband's new income. [Husband's] Exhibit 19 shows that Husband claims he paid $143,677 more in taxes for 2003 than Wife claims he paid. The explanation of this difference lies in the respective experts' competing methods of assigning the taxes paid to the appropriate calendar year. Husband argues that a basic element of a determination of a year's income is the cash flow in and out for that year. The effect of such a view is that any taxes

owing for tax year number one but paid in tax year number two, such as is often done with fourth quarter estimated payments, are attributed to tax year two. Also, any income for tax year two refunded in tax year three would not be recognized as available income for tax year two. The income for tax year two is thereby reduced. Both of these situations apply in the instant case. Husband paid all of his 2003 taxes in 2003, not leaving a payment for the fourth quarter to April of 2004, the following year, as had been his usual practice. The effect of this payment of 2003 taxes prior to the ascertainment of the final tax liability for 2003, was that Husband made a $23,000 overpayment and received a $23,000 refund on his 2003 taxes in 2004.

Husband also attributed his 2002 fourth quarter payment to 2003, merely because it was paid in April of 2003. Husband therefore substantially reduces his 2003 income through his allocation of tax payments. The court does not accept this method of analysis. It may be important to trace cash flow in this way for various business purposes, but determination of income for support is not one of them. Although Husband made lengthy arguments, citing tax and bankruptcy law as well as business reasons to justify the timing of the tax payments in a determination of their attribution, the court concludes such arguments are irrelevant to its calculation of income for the purpose of determining support. As Wife has pointed out, Pennsylvania case does not accept the cash flow argument. In *Curtis v. Curtis*, [326 Pa.Super. 40,] 473 A.2d 597 (Pa.Super.1984), the Superior Court was quite explicit in this regard, saying: "We could not permit an individual to overpay his taxes all year, and then exclude the amount of his overpayment from calculation of that individ-

ual's income." By implication from that statement, all taxes connected to one year of income are calculated for that year, no matter when paid. To do otherwise would allow serious manipulation of yearly income. The court does not find that Husband has attempted such a manipulation, but the effect of his cash flow analysis produces the same result. For support purposes, tax liability must be attributable to the year the income is earned and tax liability accrued, no matter when the tax payment is made. The court thus adopts Wife's figure of $164,295 in taxes attributable to 2003, giving Husband a net income for 2003 of $262,194. Dividing this income by twelve gives Husband a net monthly income of $21,849.50.

(Trial Court Opinion at 8–9). We accept the court's analysis. Separating the "wheat from the chaff" in Husband's arguments, the court also recognized that corporate distributions made to relieve or reimburse Husband for his tax liability are income to Husband for purposes of support. Accordingly, Husband's first issue warrants no relief.

■ ¶ 12 In his second issue, Husband asserts an analysis under *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), is mandated when the parties' net monthly income exceeds $15,000.00. A *Melzer* analysis requires the court to make a specific finding on the "reasonable expenses" associated with raising the child involved in the dispute. Husband contends Wife did not present evidence of Child's reasonable needs at the support hearing. Instead, Husband insists Wife presented evidence of her own household expenses, prorating an equal portion to Child without establishing the expenses applied to Child's needs. Further, Husband complains Wife improperly presented evidence of extra expenses, both actual and con-

templated, beyond what is reasonable for Child's care. Husband concludes the court conducted a flawed *Melzer* analysis, the support order must be vacated, and the matter remanded for a new hearing.[3] We disagree.

 ¶ 13 To define the child support obligation of a parent, the court must first determine the reasonable needs of the child. *Id.* at 470, 480 A.2d at 995.

> This is not to say that children are entitled only to the bare necessities; parents do have an obligation to share with their children the benefit of their financial achievement. Thus, where the parents' incomes permit, it may be perfectly proper for a court to recognize that certain expenditures for recreation, entertainment, and other nonessential items are reasonable and in the best interests of the children.

*Id.* (internal citation omitted). *See also DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508, 510 (1987) (stating child is entitled to reasonable standard of living based upon social station, fortune and financial achievements of parents); *Branch v. Jackson,* 427 Pa.Super. 417, 629 A.2d 170, 171 (1993) (stating wealthy parent with assets and ability to provide has legal duty to give his children advantages in reasonable accord with his financial status). Importantly, the court must calculate the child's reasonable needs separately from those of the party seeking spousal support. *Mas-*

*caro v. Mascaro,* 569 Pa. 255, 803 A.2d 1186 (2002). *See also Fitzgerald, supra* (holding trial court did not satisfy *Melzer* when it divided mother and child's combined budget into equal parts and ordered father to pay support in amount of child's prorated share).

¶ 14 Instantly, Wife testified about Child's expenses. This testimony revealed that the parties enjoyed a high standard of living. Wife addressed the costs of Child's basic needs, such as housing, food, clothing, medical care, and educational expenses. Further, Wife testified about costs associated with items specific to Child, like his activities, babysitting needs, and entertainment expenses. In support of this testimony, Wife offered a detailed budget of Child's monthly expenses. (*See* Wife's Hearing Exhibit 5, at 1; R.R. 367a.) Wife also prepared an explanation for this budget, which included her calculations and Child's average monthly expenses. (*See* Wife's Hearing Exhibit 6, at 1–4; R.R. 368a–371a.)

¶ 15 Despite Husband's argument to the contrary, the evidence did not demonstrate that Wife sought payment for expenses which did not exist before the parties' separation.[4] Significantly, Wife attempted to lessen her and Child's expenses by selling the marital residence and purchasing a home with a smaller mortgage. A second monthly budget, also prepared by Wife, indicated Child's total expenses would decrease by $657.00

---

**3.** Due to our disposition of Husband's first issue, we do not address the portion of his second issue which argues that the court should not have conducted a *Melzer* analysis, because the parties' 2003 net monthly income, **without** adding Husband's $126,189.00 corporate distribution, is less than $15,000.00.

**4.** Specifically, Husband argues Wife's budget included funding for "expenses she aspired to incur," including ski vacations and horse

shows. Husband suggests such expenses are not appropriate because Child does not participate in these activities. However, the record belies these arguments. Wife's testimony indicated Child had participated in beginners' level horse showing activities at her family's farm. (*See* N.T. Hearing, 5/27/04, at 253; R.R. at 266a.) Additionally, the ski trips contemplated by Wife are consistent with those enjoyed by the parties prior to separation. (*See id.* at 227–28; R.R. at 240a–241a.)

per month after the sale of the marital residence. (*See* Wife's Hearing Exhibit 7, at 1; R.R. 372a.) Thus, the evidence established Child's reasonable needs based upon the parties' "social station, fortune and financial achievements." *See Melzer, supra; DeWalt, supra.* Further, Wife did not simply present her own household budget, prorating a portion to Child. Wife devised Child's own budget, properly accounting for his share of household expenses, as well as his unique expenses. *See Mascaro, supra; Fitzgerald, supra.* Accordingly, we agree with the court's *Melzer* analysis and see no error in its determinations regarding Child's reasonable needs. *See Melzer, supra.*

¶ 16 In his third issue, Husband asserts he provided Wife with approximately $4,700.00 per month in voluntary, direct support payments between July 21, 2003 and November 28, 2003. Husband maintains he presented evidence of direct payments in the amount of $21,871.00. Notwithstanding Husband's evidence, the court credited Husband with only $13,800.00 in payments. Husband concludes he must be given credit for all of his support payments up to November 28, 2003. We agree.

¶ 17 Generally, "An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise." Pa.R.C.P. 1910.17. "As with the other elements of child support, a parent may receive credit against his or her support obligation only for those expenditures which actually satisfy the obligation of reasonable and necessary support; a parent should receive no credit for making voluntary payments for those "extras" which do not constitute support in the first place." *Melzer, supra* at 473, 480 A.2d at 997. The obligor has the burden to establish he is entitled to the claimed credits. *See Karp v. Karp,* 455 Pa.Super.

21, 686 A.2d 1325 (1996), *petition for allowance of appeal granted,* 549 Pa. 701, 700 A.2d 441 (1997), *appeal discontinued with prejudice* by Order of the Pennsylvania Supreme Court, dated September 16, 1998.

¶ 18 Instantly, Husband testified regarding the direct support payments he made to Wife prior to the entry of the court's support order:

[COUNSEL]: Now you separated in February of 2002. This support action wasn't brought until the end of July of 2003. In that period of time did you voluntarily support [Wife] and [Child]?

[HUSBAND]: Yes, I did.

[COUNSEL]: And how did you do that?

[HUSBAND]: By paying directly the expenses relative to the house which would include things like the mortgage, the utilities, the insurance, the taxes, [Wife's] car payment and I would also from time to time give [Wife] cash as well.

\* \* \*

[COUNSEL]: Now you continued paying voluntarily even after the support action was initiated, correct?

[HUSBAND]: Yes, I did.

[COUNSEL]: And up through November [2003]—I believe the support order was entered in this case about November 6th or 7th of 2003. Once that order was entered did you continue to make certain payments?

[HUSBAND]: I did through the end of November so that we had basically a clean cutoff of what would become garnishment payroll deductions and what I paid voluntarily so that, for example, I paid all of the November expenses, the electric, utility bills, the mortgage, [Wife's] car payment, just so that it would be a clean cutoff.

(N.T. Hearing, 4/27/04, at 6–8). Husband also presented evidence, in the form of a spreadsheet, which documented the support payments he had made to Wife between January 2003 and November 2003. (*See* Husband's Hearing Exhibit 1, at 1; R.R. 376a.)

¶ 19 Wife also testified about Husband's direct support payments:

[COUNSEL]: Now, during your period of separation, from the time you separated in February of '03—

[WIFE]: '02.

[COUNSEL]: I'm sorry, '02. Up through and until December of '03, [Husband] was making direct payments to you, correct?

[WIFE]: I think up until October of— October 15th he was making the payments. Domestic relations checks came in October.

[COUNSEL]: **But he did, in fact, continue paying, like, the mortgage, the electric, things like that, for the month of November?**

[WIFE]: **I believe for part of November he did.**

[COUNSEL]: And his first payment to Domestic Relations was November 28th, was it not?

[WIFE]: I'm not sure without looking.

(N.T. Hearing, 5/27/04, at 257–58) (emphasis added). Thus, Husband testified and Wife conceded that Husband made direct support payments to Wife in October 2003 and for part of November 2003. However, the court did not credit Husband for any payments made **after** October 15, 2003. In light of the testimony from the parties, we remand the matter solely for a determination of the full credit which Husband should be given for his voluntary, direct

payments to Wife, including October 15, 2003 through November 28, 2003. Of course, Husband must document his payments in the form of checks, receipts, or other acceptable records. We affirm the court's support order in all other aspects.

¶ 20 Based on the foregoing, we hold the court properly calculated Husband's 2003 income and the reasonable child support expenses, but failed to credit Husband for all the support payments made prior to the entry of the support order. Accordingly, we affirm the order in part, vacate in part, and remand with instructions.

¶ 21 Order affirmed in part and vacated in part. Case remanded with instructions.[5] Jurisdiction is relinquished.

---

**5.** We strongly recommend that the parties settle this issue without further expense to the parties or the court's resources.