J-S41018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HEATHER J. MOODY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY M. MOODY | : | |
| | : | |
| Appellant | : | No. 224 WDA 2023 |

Appeal from the Order Entered January 18, 2023
In the Court of Common Pleas of Washington County Domestic Relations
at No(s):  145 DR 2022

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: January 24, 2024**

Appellant, Anthony M. Moody, ("Father") appeals from the January 18, 2023 order entered in the Court of Common Pleas of Washington County that denied Father's exceptions to, and deemed as final, the support recommendation order, obligating Father to pay child support to Heather J. Moody ("Mother") for their two minor children.[1]  We vacate the support order

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The final support order stated, in pertinent part, as follows:

> [B]ased upon the [trial] court's determination[, Mother's] net monthly income is $8,283.49[,] and [Father's] net monthly income is $7,624.01.

> It is ordered that from March 22, 2022[,] through May 15, 2022[,] when [Mother] had primary custody of the minor children, [Father] shall pay to the Pennsylvania State Collection and Disbursement Unit the sum of $1,855.00 per month allocated as

and remand this case for further proceedings in accordance with this memorandum.

The trial court summarized the procedural history as follows:

> [Mother] filed a complaint for child support on March 22, 2022[,] against [Father]. The parties participated in a conference on May 5, 2022[,] and an interim order was entered on May 10, 2022.[2]
>
> $1,687.00 per month for current support and $168.00 per month for arrears.
>
> It is ordered that from May 16, 2022[,] forward, when the parties obtained [a] shared custody order, [Father] shall pay to the Pennsylvania State Collection and Disbursement Unit the sum of $119.00 per month allocated as $109.00 per month for [Father's] share of minor children's health care coverage and $10.00 per month for arrears.
>
> . . .
>
> Arrears are set at $1,414.17 as of September 14, 2022, and are due in full.
>
> . . .
>
> The monthly support obligation includes cash medical support in the amount of $250.00 annually for unreimbursed medical expenses incurred for each child and/or spouse. Unreimbursed medical expenses of the obligee and/or children that exceed $250.00 annually shall be allocated between the parties. . . . The unreimbursed medical expenses are to be paid as follows: 48 percent by [Father] and 52 percent by [Mother. Mother] shall continue to maintain health care coverage on the minor children.

Final Support Order, 1/18/23 (extraneous capitalization and emphasis omitted); **see also** Trial Court Order, 1/18/23 (adopting as the final support order, the recommendation of the hearing officer).

_____

[2] In the interim order, the trial court, having determined that Mother's monthly net income was $8,208.56 and Father's monthly net income was $2,687.29, ordered Father to pay $731.00 per month in child support and set the [amount due in] arrears at $1,548.64. Trial Court Interim Order, 5/12/22.

- 2 -

Subsequently, Mother and Father [requested a] *de novo* hearing on May 19, 2022[,] and a hearing was held on August 8, 2022[,] before [a] hearing officer[.] On September 23, 2022, the hearing officer filed a report and findings[.] Father filed exceptions to the hearing officer's report and findings on October 3, 2022[,] and each party filed briefs in support of their respective positions. Oral argument was heard before [the trial] court on January 9, 2023. Subsequently, on January 1[8], 2023, [the trial] court entered an order finding that the hearing officer did not abuse her discretion and made no error of law when making her recommendation. The recommended order was adopted by [the trial] court on January 1[8], 2023[, as the final support order.]

Trial Court Opinion, 4/13/23, at 1 (extraneous capitalization omitted).[3] This appeal followed.[4]

Father raises the following issues for our review:

1. Did the trial court abuse its discretion by concluding that [Father] has an earning capacity of over $128,000[.00] per year despite there being no factual support for that conclusion?

2. Did the trial court commit an error of law by concluding that [Father] has an earning capacity of over $128,000[.00] per year because the [trial] court failed to follow [Pennsylvania Rule of Civil Procedure] 1910.16-2(d)(4)[,] which states that age, education, training, health, work experience, earnings history[,] and child care responsibilities shall be considered in determining earning capacity?

3. Did the trial court abuse its discretion by failing to weigh the evidence and assess the credibility of [Father's] witnesses?

_____

[3] For ease of identification, we have assigned page numbers to the trial court's unpaginated opinion.

[4] Both Father and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

> 4. Did the trial court, as a finder of fact, commit an error of law by failing to consider the testimony of [Father's] witnesses, weighing the evidence, and assessing their credibility?

Father's Brief at 4-5.

Father's issues, *in toto*, challenge the trial court's child support order for which our standard of review is well established.

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the [trial] court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill[-]will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citation omitted).

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility[,] and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a [hearing officer's] report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [hearing officer] has the opportunity to observe and assess the behavior and demeanor of the parties.

***Brubaker v. Brubaker***, 201 A.3d 180, 184-185 (Pa. Super. 2018), *appeal denied*, 216 A.3d 225 (Pa. 2019). "Support orders must be fair, non-confiscatory[,] and attendant to the circumstances of the parties." ***Spahr***

*v. Spahr*, 869 A.2d 548, 552 (Pa. Super. 2005) (citation and original quotation marks omitted).

Pursuant to Section 4322(a) of the Domestic Relations Code,

Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by [our] Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, **the guideline shall place primary emphasis on the net incomes and earning capacities of the parties**, with allowable deviations for unusual needs, extraordinary expenses[,] and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

23 Pa.C.S.A. § 4322(a) (emphasis added).

Pursuant to the support guidelines, an obligation to pay child support is, generally, based on the parties' monthly net incomes, which are calculated using at least a six-month average of each party's income, including, *inter alia*, **wages**, bonuses, **net income from a business**, rents, pension plan distributions, and income from a trust. Pa.R.Civ.P. 1910.16-2(a) (emphasis added). In arriving at a party's "monthly net income," the following withholdings and payments are deducted from the party's monthly gross income: federal, state, and local income taxes; unemployment compensation taxes and local services taxes; Federal Insurance Contributions Act payments (Social Security, Medicare, and Self-Employment taxes) and non-voluntary

retirement payments; mandatory union dues; and alimony paid to the other party.  Rule 1910.16-2(c)(1).

A party's net income will not be downwardly adjusted if the trier-of-fact finds that "the party voluntarily assumed a lower paying job, quit a job, left employment, changed occupations, changed employment status to pursue an education, or employment is terminated due to willful misconduct."  Rule 1910.16-2(d)(1)(ii).  "When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity."  Rule 1910.16-2(d)(4)(i); **see also Dennis v. Whitney**, 844 A.2d 1267, 1269 (Pa. Super. 2004) (stating, "[w]here a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity"); **Woskob v. Woskob**, 843 A.2d 1247, 1254 (Pa. Super. 2004) (stating, "[w]here a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his, or her, assessed earning capacity").  When calculating a party's earning capacity, the trier-of-fact "shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position[ and ] shall determine a reasonable work regimen based upon the party's relevant circumstances, including the jobs available within a particular occupation, working hours and conditions, and whether a party has exerted substantial good faith efforts to find employment."  Rule 1910.16-2(d)(4)(i)(A)(I and II).

In determining a party's earning capacity, the trier-of-fact shall consider the party's: (A) child care responsibilities and expenses; (B) assets; (C) residence; (D) employment and earnings history; (E) job skills; (F) educational attainment; (G) literacy; (H) age; (I) health; (J) criminal record and other employment barriers; (K) record of seeking work; (L) local job market, including the availability of employers who are willing to hire the party; (M) local community prevailing earnings level; and (N) other relevant factors.

Rule 1910.16-2(d)(4)(ii)(A-N) (formatting modified). "A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition[,] and training." *Gephart v. Gephart*, 764 A.2d 613, 615 (Pa. Super. 2000) (citation and original quotation marks omitted).

"When a [parent] owns his[, or her,] own business, the calculation of income for child support purposes must reflect the actual available financial resources of the [parent]." *Spahr*, 869 A.2d at 552, *quoting* *Fitzgerald v. Kempf*, 805 A.2d 529, 532 (Pa. Super. 2002). "Further, all benefits flowing from corporate ownership[, or self-employment,] must be considered in determining income available to calculate a support obligation." *Spahr*, 869 A.2d at 552 (citation, original quotation marks, and emphasis omitted). Monthly net income for a self-employed party "must reflect actual available financial resources and not the oft-time fictional financial picture created by the application of federal tax laws." *Fennell v. Fennell*, 753 A.2d 866, 868 (Pa. Super. 2000) (citation and original quotation marks omitted)*, relying on Labar v. Labar*, 731 A.2d 1252 (Pa. 1999); *see also Fitzgerald*, 805 A.2d

at 532. In calculating a self-employed party's available monthly net income, deductions or losses reflected on an individual or business tax return, such as depreciation, amortization, and certain other allowable expense deductions, are irrelevant unless the deductions reflect an actual reduction in available cash. **Fennell**, 753 A.2d at 868; **see also Commonwealth v. Miller**, 198 A.2d 373, 375 (Pa. Super. 1964) (*en banc*) (stating, "depreciation should not enter into a computation of a [parent's] income upon which a support order may be based" because "[d]epreciation involves no cash expenditure at the time it is taken as a deduction"); **Cramer v. Cramer**, 2020 WL 525335, at *4 (Pa. Super. filed Jan. 31, 2020) (unpublished memorandum) (stating, the fact "[t]hat [the federal tax code] provides various opportunities for deductions and expenses in order to offset [taxable] income does not mean that such deductions apply in the context of child support"); **but see Berry v. Berry**, 898 A.2d 1100, 1107 (Pa. Super. 2006) (stating, "unreimbursed business expenses may be deducted in determining monthly [net] income if the expenses constitute *bona fide* expenses"), *appeal denied*, 918 A.2d 741 (Pa. 2006). Thus, by way of example, meal and entertainment expenses, personal automobile expenses, and depreciation and amortization expenses, while typically permitted as allowable deductions for federal income tax purposes for a self-employed person, may be included, under certain circumstances, in the self-employed party's net income for purposes of calculating child support.

In the case *sub judice*, the hearing officer determined, and the trial court agreed, that Father had an earning capacity of $128,065.00. Report and

Findings of Hearing Officer, 9/23/22, at 3;[5] **see also** Trial Court Opinion, 4/13/23, at 3 (stating, "[t]here is sufficient evidence to support the [h]earing [o]fficer's conclusion that Father has an earning capacity of $128,065[.00]"). In reaching her conclusion as to Father's earning capacity, the hearing officer found that Father "has been a licensed, **self-employed** consumer bankruptcy attorney for the past 22 years" and has a "Bachelor of Arts degree in economics and business obtained from [the University of Pittsburgh] in 1995, [a Master of Business Administration post-graduate degree from Robert Morris University] in 1996, a Master of Laws degree from the University of Hong Kong in 1998[,] and a Juris Doctorate degree from Duquesne University [School of Law] in 1999."[6]  Report and Findings of Hearing Officer, 9/23/22, at 2 (emphasis added); **see also** N.T., 8/8/22, at 53 (stating, "I [(Father) have been] self-employed for the last 22 years as a consumer, meaning debtor's side, [attorney] helping individuals, not companies, file Chapter 7 and Chapter 13 bankruptcies").  The hearing officer relied upon the vocational expert's report to impute Father's earning capacity to be $128,065.00 based upon the average salary of attorneys practicing in Allegheny County, Pennsylvania, and Washington County, Pennsylvania.  Report and Findings of Hearing Officer, 9/23/22, at 2; **see also** Trial Court Opinion, 4/13/23, at 4; Mother's Exhibit

_____

[5] For ease of identification, we have assigned page numbers to the hearing officer's unpaginated report and findings.

[6] Father is also fluent in Chinese.  Report and Findings of Hearing Officer, 9/23/22, at 2.

5, at 8 (stating, "[b]ased upon his vocational profile and the labor market research, it is the opinion of this evaluator that [Father's] earning capacity is $128,065[.00], which is the average of the wages for attorneys in Allegheny and Washington counties" (emphasis omitted)).

Upon review, we discern that the trial court erred in imputing an earnings capacity to Father in the amount of $128,065.00 based upon the report proffered by Mother's vocational expert without first examining whether Father's self-employment net income fell below an appropriate earning capability for a person of Father's education and work experience.[7] As determined by the hearing officer, Father has been self-employed as a

_____

[7] We further find that the trial court's reliance on the $128,065.00 figure to be an abuse of discretion in that this figure merely represents "the average" salary of attorneys practicing in all areas of the law, *i.e.*, criminal, civil, litigation, mergers, finance, real estate, estates and trusts, domestic relations, etc. within Allegheny County and Washington County.

Pennsylvania Rule of Professional Conduct 1.1 requires attorneys to "render competent representation to clients" by possessing and exercising "the legal knowledge, skill, thoroughness[,] and preparation reasonably necessary" to effectuate the representation of his or her client in a given legal matter. **Off. Of Disciplinary Counsel v. Baldwin**, 225 A.3d 817, 837 (Pa. 2020); **see also** Pa.R.P.C. 1.1.

As found by the hearing officer, Father, in the case *sub judice*, has an extensive educational resume, but in his 22 years of practice, Father concentrated on consumer bankruptcy matters. As such, if it is necessary to impute an earning capacity on Father, as discussed *infra*, then the trial court, in addition to the factors for consideration as outlined in the support guidelines (**see** Rule 1910.16-2(4)(ii)), should consider Father's earning capacity in light of his specific skill set and his chosen area of practice without consideration of an "average" attorney salary.

consumer bankruptcy attorney for the past 22 years. Because Father is self-employed, it was incumbent upon the trial court to first assess whether Father's monthly net income was reasonable and appropriate by applying the support guidelines as set forth in Rule 1910.16-2(a–c). The determination of Father's monthly net income, *i.e.*, available cash flow for meeting child support obligations, would, as discussed *supra*, necessitate a calculation of Father's wages, as well as his monthly net income from his business enterprise without taking into consideration certain allowable deductions provided by the Federal Income Tax Code, *i.e.*, depreciation expenses.[8] ***See Miller***, 198 A.2d at 375 (stating, "[t]he net income of a [parent] as shown on income tax returns is not to be accepted in a support case as the infallible test of his[, or her,] earning capacity"). It is only after the trial court applies the support guidelines to determine Father's "true" monthly net income as a self-employed parent, that the trial court may then turn to a determination of whether Father's monthly net income fails to give rise to an appropriate earning capacity for a person with Father's education and work experience. ***See Amato v. Amato***, 284 A.3d 893, 2022 WL 3088530, at *3 (Pa. Super. filed Aug. 3, 2022) (unpublished memorandum) (stating, "[i]f a [parent] owns a business, the calculation of income for child support purposes must reflect the actual

---

[8] For example, Father testified that, in 2020, his business's gross revenue was $124,000.00 "before [bankruptcy] filing fees, advertising, salaries, court costs, [] mileage[,] and all the other allowable deductions." N.T., 8/8/22, at 78. Father further stated that his gross revenue for 2021, was $85,683.01. ***Id.*** at 86-87.

- 11 -

available financial resources of the [parent, and] all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation" (citations and original quotation marks omitted)); **see also Woskob**, 843 A.2d at 1255 (reiterating that, "earning capacity is measured as of the date of the support hearing"). Put differently, before fixing a support obligation based upon an assessed or imputed earnings capacity, the trial court needed first to consider whether Father's current self-employment income was inappropriate, either because of willful misconduct or a refusal to accept or attain appropriate employment.

It is only after a trial court determines that a parent's monthly net income as a self-employed individual is inappropriate given, *inter alia*, the parent's education and work experience, that the trial court may turn to examining whether the parent willfully failed to obtain or maintain appropriate employment. Rule 1910.16-2(4)(i). If the parent willfully failed to obtain or maintain appropriate employment, then the trial court may impute a monthly net income to the parent that is equal to the parent's reasonable earning capacity. A parent willfully fails to obtain or maintain appropriate employment when the parent engages in a course of conduct designed to reduce his or her earning capacity for the purpose of minimizing his or her child support obligation. **Isralsky v. Isralsky**, 824 A.2d 1178, 1188 (Pa. Super. 2003) (explaining that, father willfully failed to obtain or maintain appropriate employment when he terminated employment, started his own business for the 28-month period following the parties separation, and sought minimal

outside employment opportunities); *see also Woskob*, 843 A.2d at 1254 (stating, "[i]t is settled law that a party cannot voluntarily reduce his[, or her,] earnings in an attempt to circumvent [a child] support obligation"); *but see Dennis*, 844 A.2d at 1270 (explaining that, a parent did not willfully fail to obtain or maintain appropriate employment where the parent worked in his present employment position approximately nine years prior to the birth of the child and is "quite simply doing the best that he can"); *Mackay v. Mackay*, 984 A.2d 529, 538 (Pa. Super. 2009) (finding that, father did not willfully fail to obtain or maintain appropriate employment where father was using his best efforts to maximize his income), *appeal denied*, 995 A.2d 354 (Pa. 2010).

Consequently, we vacate the January 18, 2023 final child support order and remand this case in for further proceedings in accordance with this memorandum.[9]

Order vacated. Case remanded. Jurisdiction relinquished.

---

[9] In light of our disposition herein, we do not address Father's third and fourth issues pertaining to, *inter alia*, weight of the evidence and credibility of witnesses.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/24/2024