J-A05032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SERENA JACLYN CERSOSIMO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC MICHAEL RAYNES | : | No. 484 WDA 2024 |

Appeal from the Order Entered March 13, 2024
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-15-002099-001,
PACSES: 641115940

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED: June 6, 2025**

Serena Jaclyn Cersosimo ("Mother") appeals from the order that, *inter alia*, assigned both Mother and appellee, Eric Michael Raynes ("Father")[1], an earning capacity of $15.00 per hour and granted Father's petition for modification, setting his child support obligation at $0.00.[2] On appeal, Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father is representing himself *pro se*.

[2] The appealed-from order was not entered on the trial court's docket at or around the time it was dated, March 13, 2024. Correspondingly, this Court, on July 19, 2024, directed the court to enter the order on its docket. The trial court complied, filing the order on July 29, 2024. Nevertheless, the docket does not comply with Pennsylvania Rule of Civil Procedure 236(b) insofar as there is no "note in the docket" from "[t]he protonotary" establishing "notice" that the order had been entered. *See* Pa.R.Civ.P. 236(b). As none of the parties raise this procedural deviation as an issue, we maintain the order's date in the appeal paragraph of this memorandum as the one provided in the
*(Footnote Continued Next Page)*

raises five issues, but principally contests the court's ascertainment of Father's earning capacity. We affirm.

As summarized by the trial court:

Mother and Father are the parents of one minor child born in 2014. The [c]ourt first became involved with the family in 2015 following Mother's and Father's separation. Since that time, the parties have appeared before the [c]ourt on numerous occasions for equitable distribution, custody, name change[,] and support hearings and related motions and conciliations. Most recently, the parties appeared for a six-day custody trial beginning in July 2021 and ending in March 2022. On April 6, 2022[,] [the trial c]ourt issued a [f]inal [c]ustody [o]rder which granted the parties 50/50 custody of their child.

On May 6, 2022, Father filed a [p]etition for [m]odification of the existing support order due to the change in custody. A support conference was initially scheduled for September 13, 2022. However, Mother filed a [m]otion to [d]eem the [c]ase [c]omplex[,] which [the trial c]ourt granted. A [c]omplex [s]upport [h]earing was then scheduled for January 31, 2023[,] before Hearing Officer Chester Beattie. Both parties appeared for the hearing[,] and Mother was represented by counsel. On February 2, 2023, Hearing Officer Beattie entered a [r]ecommendation and [o]rder of [c]ourt assigning Mother an earning capacity of $15[.00] per hour with a monthly net income of $2,167 and Father a monthly net income of $4,117. Based on these figures, Hearing Officer Beattie set Father's monthly child support obligation at $519.95 per month.

On February 20, 2023, Father filed exceptions to the February 2, 2023 [o]rder. Oral argument was scheduled for May 16, 2023. Both Father and Mother's counsel attended oral argument, but the

_____

order's text, March 13, 2024. ***But see*** Pa.R.A.P. 108(b) (establishing that "[t]he date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)[]").

[c]ourt lacked a sufficient record on which to base a determination. As directed by a March 16, 2023 scheduling order, Father had attempted to order the transcript of the January 31, 2023 [c]omplex [s]upport [h]earing, but failed to follow up when he did not receive it. The [c]ourt continued the matter and directed Father to order the transcript, which he did.

On September 5, 2023, Father and Mother's [c]ounsel again attended oral argument on Father's exceptions. Following oral argument, the [c]ourt reviewed the transcript from the January 31, 2023 [c]omplex [s]upport [h]earing and found that while Father provided lengthy testimony regarding his income and expenses, the record was far less detailed with respect to Mother's income and expenses. Accordingly, on October 6, 2023, the [c]ourt entered an [o]rder granting Father's exceptions and interpreting them to collectively dispute the [h]earing [o]fficer's calculation of the parties' incomes. On October 31, 2023, the [c]ourt issued an [o]rder scheduling a supplemental support hearing for January 31, 2024.

The parties and Mother's counsel appeared on January 31, 2024[,] via Microsoft Teams. However, the [c]ourt was unable to proceed with a full hearing due to the parties' scheduling conflicts. The [c]ourt instead conducted a pre-hearing conference and rescheduled the matter for February 28, 2024. Both parties and Mother's counsel again appeared via Microsoft Teams on February 28, 2024[,] for the supplemental hearing. The [c]ourt heard testimony from both Mother and Father, as well as Father's primary care physician, and admitted several exhibits. On March 13, 2024, the [c]ourt issued an [o]rder granting Father's [p]etition for [m]odification, retroactive to its May 6, 2022 filing date, assigned both parties an earning capacity of $15.00 per hour, and set Father's child support obligation to $0.00. The [o]rder also directed the [d]omestic [r]elations [s]ection to issue an order regarding any arrears and/or overpayments.

Trial Court Opinion, 7/22/24, at 1-4 (footnote omitted).

Mother filed a timely appeal from the court's omnibus support decision and correspondingly filed a timely concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On appeal, Mother presents five questions

for review:

> 1. Did the trial court procedurally err by failing to abide by state and county local rules and support procedures pursuant to Pennsylvania Rule of Civil Procedure 1910.12, which obligates the trial court to hear arguments and enter a final order of court within sixty days of the filing date of exceptions to a hearing officer's recommendation?
>
> 2. Did the trial court procedurally err by failing to abide by Pennsylvania Rule of Civil Procedure 1910.12(h), which obligates a court to enter a final order consistent with Rule 1910.27(e) within sixty days of the filing date of exceptions to a hearing officer's recommendation?
>
> 3. Did the trial court err in granting Father's exceptions and assigning him an earning capacity of $15.00 per hour despite Mother's evidence proving Father receives monthly income far beyond $15.00 per hour in earnings?
>
> 4. Did the trial court err by calculating Father's monthly child support obligation as $0.00 and finding the parties to earn equal incomes, despite Mother providing evidence before the hearing officer to support Father earning a higher income?
>
> 5. Did the trial court erroneously enter a final order of court on March 13, 2024, when it ordered Mother to repay Father any overpayment in child support, applying retroactively for twenty-two months?

Mother's Brief, at viii.

In cases involving appeals from child support orders, we employ the following standard of review:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly

unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***Summers v. Summers***, 35 A.3d 786, 788 (Pa. Super. 2012) (citation omitted).

Moreover,

this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first[ ]hand.

When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

***Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009) (citations omitted; formatting altered).

In her first issue, Mother avers that the trial court deviated from both state and local[3] procedural rules because it did not hear argument and enter a final order within sixty days of the filing date of exceptions to the hearing officer's recommendation. Specifically, Mother claims that the trial court did not follow Pennsylvania Rule of Civil Procedure 1910.12. Instead, according to Mother, the court created its own procedure and, *inter alia*, conducted a

---

[3] Mother's brief does not contain any specific references to any local rules of procedure.

"supplemental hearing," which foreclosed on her right to file exceptions. *See*

Mother's Brief, at 16.

> Mother specifically highlights Rule 1910.12(d), which states that:
>
> The hearing officer shall receive evidence, hear argument and, not later than 20 days after the close of the record, file with the court a report containing a recommendation with respect to the entry of an order of support. The report may be in narrative form stating the reasons for the recommendation and shall include a proposed order substantially in the form set forth in Rule 1910.27(e) stating:
>
> > (1) the amount of support calculated in accordance with the guidelines;
> >
> > (2) by and for whom it shall be paid; and
> >
> > (3) the effective date of the order.

Pa.R.Civ.P. 1910.12(d). Mother then illuminates additional subsections of Rule

1910.12, which establish that the court, "without hearing the parties," is to

enter an interim order consistent with the hearing officer's proposed order,

Pa.R.Civ.P. 1910.12(e), give the parties twenty days to file exceptions to the

hearing officer's report, *see* Pa.R.Civ.P. 1910.12(f), and then, "[i]f exceptions

are filed . . . [t]he court shall hear argument on the exceptions and enter an

appropriate final order substantially in the form set forth in Rule 1910.27(e)

within sixty days from the date of the filing of exceptions to the interim order."

Pa.R.Civ.P. 1910.12(h).

Although Father filed exceptions to the hearing officer's

recommendation on February 20, 2023, the court "did not hear oral arguments

on Father's exceptions until September 5, 2023, and did not enter a final

[o]rder of [c]ourt until March 13, 2024." Mother's Brief, at 17.[4] In violation of Rule 1910.12, the court's March 13, 2024 order "was issued three hundred and twenty-seven . . . days after the original sixty . . . day deadline from the date of filing the exceptions." *Id.* at 18 (emphasis omitted).

The court, in its opinion, writes that

> On March 16, 2023, the [c]ourt issued an [o]rder scheduling argument on Father's exceptions for May 16, 2023. Upon receiving notice of the argument date, Mother was put on notice that the scheduled date exceeded the sixty . . . day deadline provided for in Pa.R.C[iv].P. 1910.12. At no time has Mother objected to [the c]ourt's scheduling of either the May 16, 2023 or September 5, 2023 argument dates or the supplemental support hearing dates of January 31, 2024[,] and February 28, 2024[,] on the basis of failure to comply with Pa.R.C[iv].P. 1910.12.

Trial Court Opinion, 7/22/24, at 6 (footnote omitted). The court then "suggests" that waiver of Mother's claim is appropriate because Mother failed to object to this scheduling order or process, notwithstanding any technical violation of Rule 1910.12. *Id.* at 6-7.

---

[4] Mother also argues, in passing, that the court, on May 16, 2023, told Father that he failed to request and/or pay for the January 31, 2023 hearing's transcript, and that Father's failure to do so "should have dismissed [his] exceptions." Mother's Brief, at 18. However, Mother does not provide any authority for this proposition nor provide any development into this assertion beyond a singular sentence.

Similarly limited to one sentence, Mother also challenges the court's interpretation of Father's exceptions, stating that "nowhere in Father's 10-sentence exceptions pleading does he state that he 'disputes the [h]earing [o]fficer's calculations of the parties' incomes.'" *Id.* (record citation omitted). However, Mother presents no basis to conclude that the court's framing of Father's issues was erroneous.

Mother does not seek any discernable relief stemming from the court's alleged tardiness and merely suggests that it was in error for the court to have operated in this manner. **See** Mother's Brief, at 19 ("[I]n light of the standard of review and law, the [c]ourt egregiously errored by failing to abide by the support procedure pursuant to Rule 1910.12."). Nevertheless, we agree with the court that the proper juncture for a challenge to its adherence to Rule 1910.12 would have been upon receipt of the order scheduling argument beyond the sixty-day time frame established in the Rule. In failing to timely contest the court's deviation from Rule 1910.12, much less show what relief would be warranted assuming a procedural violation had occurred, Mother implicitly acquiesced to the subsequent argument and support hearing dates, resulting in waiver. **Cf. McMillan v. Children and Youth Services Delaware County**, 1791 EDA 2021, 2022 WL 1235725 at *5 (Pa. Super., filed April 27, 2022) ("failure to object to the timing and/or scheduling of a custody trial under Rule 1915.4 constitutes waiver on appeal") (citation omitted).[5] As such, Mother is due no relief on this claim.

In her second issue, Mother contends that the court erred by failing to enter a final order consistent with Rule 1910.27(e), which she alleges contains an adaptable form child support order, allowing for the court to insert its findings as to, *inter alia*, the parties' net incomes. **See** Pa.R.Civ.P. 1910.27(e).

---

[5] We may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value. **See** Pa.R.A.P. 126(b).

Mother argues that the court's support order, here, erroneously "failed to state the parties' month[ly] net incomes, the percentage split of unreimbursed medical expenses, and/or name the party to provide medical insurance for the [c]hild." Mother's Brief, at 20.

The court, in response, succinctly states that its "determination terminated child support in this matter, and therefore . . . an order consistent with Pa.R.C[iv].P. 1910.27(e) was unnecessary." Trial Court Opinion, 7/22/24, at 8.

After our review, we conclude that, although Rule 1910.12(h) indicates that the court "shall . . . enter an appropriate final order substantially in the form set forth in Rule 1910.27(e)," Pa.R.Civ.P. 1910.12(h), Mother has provided no authority to establish that an order of zero child support requires the same form-based order. Indeed, the form support order contemplates a scenario where there is an obligation from one party to another. **See** Pa.R.Civ.P. 1910.27(e) ("it is hereby ordered that the Payor pay to the Domestic Relations Section . . . \_\_\_\_\_ Dollars . . . a month payable . . . as follows[]"). Here, there is no obligation, as Father owes zero in support. Given this distinction, we see no basis to depart from the trial court's conclusion that such an order, strictly issued pursuant to Rule 1910.12(e), was unnecessary. Accordingly, Mother has failed to demonstrate her entitlement to relief on this basis.

In her third claim, Mother challenges the court's ascertainment of

Father's $15.00 per hour earning capacity, which was attendant to its grant of Father's exceptions. Mother asserts that the court "incorrectly applied the law and weighed the evidence which was presented before the [h]earing [o]fficer and herself." Mother's Brief, at 21. Mother indicates that the hearing officer found her evidence to be credible. *See id.* Mother then outlines how child support obligations are to be calculated, arguing that "child support is generally based on the parties' monthly net incomes[.]" *Id. citing* Pa.R.Civ.P. 1910.16-2. Furthermore, Mother contends that "if a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity." *Id. citing* Pa.R.Civ.P. 1910.16-2(d)(4)(i). Mother then highlights that "income" under 23 Pa.C.S. § 4302 is defined expansively, including "net income from other entitlements to money or lump sum awards." Mother's Brief, at 22. Finally, Mother notes that "all benefits flowing from corporate ownership must be considered in determining income available to calculate a child support obligation." *Id. citing* **Spahr v. Spahr**, 869 A.2d 548, 552 (Pa. Super. 2005).

Mother suggests that she demonstrated, in front of the hearing officer, that "Father was self-employed through Iron City Property Maintenance [("Iron City")] as a consultant or supervisor with his adult son, who was also self-employed by the same company." Mother's Brief, at 23. Mother contends that, through his own words, Father's monthly expenses were paid for by his son, amounting to over three thousand dollars per month. **See id.** Mother also

avers that Father's name is inherently associated with the Iron City business, so any money derived from it "should be included as income for child support purposes in calculating Father's monthly net income." *Id.* Mother then provides a bifurcated list of Mother and Father's assets/expenses, writing that she: (1) resides in a mortgage-free home built by her grandparents; (2) drives a loan-free vehicle; and (3) solely pays for the child's summer camps and extracurricular activities.[6] *See id.* at 24. Conversely, according to Mother, Father has: (1) two vehicles registered in his name that are associated with Iron City; (2) a personal vehicle; (3) two motorcycles; and (4) an active commercial driver's license. *See id.* Simply put, Mother disputes the court's designation of Father's earning capacity.

The court noted its "extensive history with the parties dating back to 2015, and most recently a six-day custody trial." Trial Court Opinion, 7/22/24, at 9 (stating further that it was "very familiar with the parties and their respective situations[]"). It found:

> Father is 62 years old and has health limitations. While these limitations do not entirely prevent Father from working, he is not presently employed and is not looking for employment. Mother is 39 years old and has a college degree, as well as certifications for a real estate license that she does not keep active. Mother is not presently employed and has not recently attempted to find suitable employment.
>
> Fortunately for both parties, they have family members who are

---

[6] It is not clear how Mother's assets and expenditures are relevant to the court's calculation of *Father's* earning capacity.

willing to support them. For Mother, this is maternal grandmother, and for Father, it is his sons Eric and Anthony. During the [c]omplex [s]upport [h]earing, Father consistently testified that he was not employed or paid by his son Eric's business, Iron City Property Maintenance, and that his expenses were handled by his sons. After conducting a lengthy examination of Father, Hearing Officer Beattie attempted to establish a monthly income for Father by offering his own off[-]the[-]cuff estimates of monthly expenses in addition to the expenses Father had testified to. In contrast, Hearing Officer Beattie did not fully explore Mother's financial arrangement with maternal grandmother and simply assigned Mother an earning capacity of $15.00 per hour despite testimony that, similar to Father, Mother could seek financial assistance from maternal grandmother whenever she needed. It was due to this lack of information that the [c]ourt granted Father's exceptions disputing the [h]earing [o]fficer's calculations and scheduled the [s]upplemental [s]upport [h]earing.

During the [s]upplemental [s]upport [h]earing, the [c]ourt had the opportunity to obtain additional information from Mother regarding her expenses and financial arrangement with maternal grandmother. In addition, Mother provided a budget sheet listing her monthly expenses in various categories, which upon review, seemed to the [c]ourt to underestimate the true costs of some items and completely lack categories for other common expenses. For example, things like vehicle related expenses, such as registration and inspection fees or repairs, and [c]hild's summer camps, which she had previously testified to paying during the [c]omplex [s]upport [h]earing, were absent from her budget.

When questioned about her vehicle, Mother testified that she has no vehicle payment as the outstanding balance on Mother's recently purchased vehicle was paid by maternal grandmother, who is also on the registration, and included a warranty. Regarding registration and inspection fees, Mother testified that those items had not been discussed, but again, if Mother is unable to afford the fees that maternal grandmother would cover them. Regarding [c]hild's summer camps, Mother contradicted her prior testimony and told the [c]ourt that maternal grandmother usually cover those types of expenses for [c]hild. The [c]ourt also notes that Mother lives in a home that was bought and renovated for her by maternal grandmother, and as such, she has no mortgage or rent expenses.

During the [c]omplex [s]upport [h]earing, Mother testified she would be able to call maternal grandmother if she needed money or had bills that needed to be paid. She further elaborated that their financial arrangement is "just kind of mixed together." Similarly, the whole of Father's testimony over the two hearings established that he pays whatever expenses he can, and the rest is taken care of by his son[,] whom he checks in with daily. When questioned about his continued involvement with Iron City doing things like invoices or bids, Father testified that he does not consider it employment and he is simply helping his son out. The [c]ourt found Father's testimony credible in this regard.

In considering all of the evidence presented during the two hearings, the [c]ourt ultimately rejected Hearing Officer Beattie's determination that Father was receiving monthly income in the form of his expenses paid by his sons. The evidence, rather, revealed that both parties are in some form or fashion paying for their expenses without an income and are fortunate to have other family members to cover what they cannot. As such, the [c]ourt ultimately concluded that Father shares an equal earning capacity as Mother, who did not dispute the $15.00 per hour assignment. In arriving at this conclusion, the [c]ourt took into account that the parties share 50/50 custody of [c]hild who appears to want for nothing despite the fact that both parties are voluntarily unemployed. . . . Here, neither party offered testimony that they are unable to provide for [c]hild or that [c]hild is receiving more "benefits" in one party's care versus the other.

The evidence established that, while both parties are unemployed and without income, [c]hild is well taken care of in both homes, due in part to the support the parties receive from their family members. Hearing Officer Beattie's recommendation amounted to imposing an obligation on Father's adult sons to support his [child, who is also] their younger half-sister. [The court thus] entered an order that appropriately reflects the parties' equivalent circumstances.

Trial Court Opinion, 7/22/24, at 9-12 (footnotes and record citations omitted).

Cognizant of our standard of review, which requires accepting the supported-by-competent-evidence findings of the trial court and deference to its credibility determinations, *see Mackay*, 984 A.2d at 533, we see no abuse

- 13 -

of discretion in the court's conclusions that Father was not deriving "income" from Iron City and that, given their respective familial connections, Father and Mother were effectively level in terms of monetary support, notwithstanding the fact that neither party was currently working.

In particular, Father consistently testified that he was unemployed. ***See, e.g.***, N.T. Supplemental Support Hearing, 2/28/24, at 33. Although he still consulted and helped his sons "with bids" and constructed "invoices for them," Father did not consider it work "for the company." ***Id.*** Instead, he was merely helping his "kid out." ***Id.*** Father talks to Eric, his son and owner of Iron City, "every day." ***Id.*** at 34. In terms of their financial arrangement, Eric asks Father what his expenses are in a given month and then "just takes care of it." ***Id.***

Based on, *inter alia*, Father's uncontradicted testimony describing his particular involvement in his son's business, which appears to be more of gratuitous familial help rather than gainful employment, we discern no error in the court's calculation of Father's earning capacity of $15.00 per hour.

Relatedly, in her fourth issue, Mother argues that the court erred by setting Father's monthly child support obligation at zero dollars. Mother states that the hearing officer found Father's monthly net income to be $4,117.00 per month and set Father's monthly support obligation to Mother at $569.95 per month. ***See*** Mother's Brief, at 25-26. Mother complains that the court, nevertheless, never "question[ed] Father as to why he is allegedly not

working; which jobs he has applied for; and/or why he does not have an income." *Id.* at 27. Instead, mother contends, the court "thoroughly questioned Mother as to her monthly budget[.]" *Id.* Moreover, the court "also questioned Mother about her lack of employment and her diligence in seeking employment, despite Mother's earning capacity not being the issue of Father's exceptions[.]" *Id.* We conclude that Mother is not entitled to relief.

We emphasize the previously-quoted statement from the trial court that it "is very familiar with the parties and their respective situations." Trial Court Opinion, 7/22/24, at 9. We also note that the court is in the best position to assign proper weight to the testimonial credibility and evidence that it received. *Cf. Mackay*, 984 A.2d at 533. At the supplemental support hearing, Dr. Mark Gottron, Father's primary care doctor, testified that although he was not a board-certified cardiologist, based on his interpretation of Father's medical issues, Father could not work a forty-hour work week. *See* N.T. Supplemental Support Hearing, 2/28/24, at 6, 9, 15 (testifying further that Father has "coronary artery disease, peripheral arterial disease, and diffuse osteoarthritis[]" and "COPD" which "affects his ability to earn income"). Nevertheless, Dr. Gottron referred Father to a cardiologist for a more specific opinion regarding Father's ability to work.

Father's stated medical conditions, when juxtaposed against his own testimony, provide insight into, and therefore record support of, the limitations on his ability to work. *See, e.g.*, *id.* at 36 (Father testifying that

- 15 -

he wants to quit smoking because he cannot breathe). Although Mother apparently takes issue with some of the court's lines of questioning or its omissions in not pursuing certain questions, the court credited Father's testimony insofar as he stated that his medical conditions and age prevented him from hypothetical work in excess of $15.00 per hour. Even if our credibility determinations would have differed from the trial court, we simply may not usurp the trial court's factfinding function, which, through extensive testimony and documentary evidence, found that Mother and Father were in financial parity with one another, surrounded by far-reaching support from their respective family members. **Compare id.** at 30-35 (Father's testimony on his ability to work and financial arrangements), **with id.** at 40-78 (Mother's testimony on her ability to work and financial arrangements). As such, we are unable to find any abuse of discretion in the court's determination that Father owed Mother no child support.

In her final issue, Mother avers that the court erroneously ordered her to pay Father any "overpayment" of child support. This repayment was ordered to be retroactive, going back twenty-two months, which corresponds to the date in May 2022 when Father originally filed his petition for child support modification. Mother's argument spans four sentences, includes no citations to authority, and largely restates her earlier contention that the court should have entered a final order on or before sixty days from the date that Father filed exceptions. Mother also contends, without further explanation,

that she has been "financially prejudiced[.]" Mother's Brief, at 28.

Rule 1910.17(a) establishes that "[a]n order of support shall be effective from the date of the . . . petition for modification unless the order specifies otherwise." Pa.R.Civ.P. 1910.17(a). Having failed to contemporaneously object to the court's argument and hearing timelines when they were originally scheduled and in the absence of providing any authority that could warrant reversal on this ground, we conclude that Mother is due no relief. Simply put, Mother has failed to present any coherent reason requiring the court to deviate from the default date presumption contained in Rule 1910.17(a).[7]

In finding no merit to any of Mother's five issues, we affirm the trial court's support order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/6/2025

---

[7] The court also suggests that "some of the extended time it took to resolve this proceeding resulted from Mother's request to declare the case complex." Trial Court Opinion, 7/22/24, at 7.